UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>               Plaintiff,<br><br>   v.<br><br>FRANCISCAN HEALTH SYSTEM d/b/a CHI FRANCISCAN HEALTH; FRANCISCAN MEDICAL GROUP; THE DOCTORS CLINIC, a Professional Corporation; and WESTSOUND ORTHOPAEDICS, P.S.,<br><br>               Defendants. | CASE NO. C17-5690 BHS<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS |

This matter comes before the Court on Plaintiff the State of Washington's ("the State") motion for partial judgment on the pleadings as to the weakened competitor defense. Dkt. 153. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby grants the motion for the reasons stated herein.

ORDER - 1

# I. PROCEDURAL HISTORY

On August 31, 2017, the State filed a complaint against Franciscan Health System, Franciscan Medical Group (collectively "Franciscan"), The Doctors Clinic ("TDC"), and Westsound Orthopaedics. Dkt. 1. Relevant to the instant motion, the State alleged that a series of agreements between Franciscan and TDC violated section 1 of the Sherman Act, 15 U.S.C. § 1. Dkt. 1, ¶¶ 67–68. The State alleged these agreements represented a *per se* violation of section 1, and in the alternative, violated section 1 under the rule of reason. *Id*. ¶¶ 70–74. On March 26, 2018, TDC and Franciscan answered, asserting multiple affirmative defenses. Dkts. 88, 89. Also relevant to the instant motion, on July 24, 2018, the Court granted in part the State's motion to strike certain affirmative defenses from TDC and Franciscan's answers. Dkts. 105, 132.

In its July 24th Order, the Court struck the first two sentences of TDC and Franciscan's tenth affirmative defense, which reads:

> TDC was as of the date of the transaction with CHI Franciscan a failing company. But for the transaction, TDC would have gone out of business, and its productive assets (including its physicians) would have left the market. Alternatively, even if TDC, or some of its physicians, could have stayed in the market without the transaction, its competitive significance would have been far less than it was before the transactions.

Dkt. 132 at 17 (citing Dkt. 89 at 48). The first two sentences pertain to the affirmative "failing-company defense," which the State argued and the Court agreed is not available for *per se* claims under section 1 of the Sherman Act. Dkt. 132 at 17. The Court reasoned that the failing-company defense "has been applied successfully only in the context" of section 7 of the Clayton Act, 15 U.S.C. § 18. *Id*. at 18. The Court distinguished section 1

of the Sherman Act which "examines the existence of an 'unreasonable restraint on trade' under either the rule of reason or per se test" from "the substantial lessening of competition presented under the Clayton Act." *Id*. The Court further reasoned that "[a]n alleged scheme of horizontal price-fixing, as alleged by the State, falls into the narrow category of arrangements that are per se illegal—'they are not evaluated in terms of their purpose, aim or effect in the elimination of so-called competitive evils.'" *Id*. (quoting *United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 228 (1940)). The Court declined to consider the State's motion to strike the second half of the tenth affirmative defense, the "weakened competitor" defense, because the State raised relevant arguments for the first time in reply. Dkt. 132 at 19. However, the Court commented "[a]t first blush, it seems apparent that such a defense is irrelevant in this case for the same reason as the failing-company defense." *Id.*

On November 29, 2018, the State moved for partial judgment on the pleadings as to the TDC and Franciscan's weakened competitor defense. Dkt. 153. On December 10, 2018, TDC and Franciscan responded. Dkt. 159. On December 14, 2018, the State replied. Dkt. 160.

## II. FACTUAL BACKGROUND

In early September 2016, Franciscan and TDC entered into a series of agreements. The State claims that Franciscan and TDC are separate economic entities which entered into an agreement to jointly negotiate the prices for the services they provide to the public. The State asserts that these agreements establish a horizontal price-fixing

agreement that is *per se* illegal or otherwise constitutes an unreasonable restraint of trade in violation of section 1 of the Sherman Act.

### III.  DISCUSSION

**A.     Motion for Judgment on the Pleadings**

The State has moved for judgment on the pleadings on the weakened competitor affirmative defense advanced by TDC and Franciscan. "After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c).  The pleadings are closed for purposes of Rule 12(c) once a complaint and answer have been filed.  *Doe v. United States*, 419 F.3d 1058, 1061 (9th Cir. 2005).  While an affirmative defense "will usually bar judgment on the pleadings" if it raises issue of fact, *Gen. Conference Corp. of Seventh-Day Adventists v. Seventh-Day Adventist Congregational Church*, 887 F.2d 228, 230 (9th Cir. 1989), courts will grant a Rule 12(c) dismissal if "the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law," *Doleman v. Meiji Mut. Life Ins. Co.*, 727 F.2d 1480, 1482 (9th Cir. 1984) (quoting Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1368 (1st ed. 1969)).

Here, TDC and Franciscan present two points of opposition to the State's motion: (1) they believe that in a rule of reason analysis, they should be able to affirmatively defend on the basis that TDC was a weakened competitor, and (2) they believe the weakened competitor defense should remain available in the event the State decides to allege their conduct constituted a merger violating section 1 of the Sherman Act. Dkt. 159. The Court will address the second argument first.

### 1. Merger

"[T]he 1950 amendment of Clayton Act § 7 largely superseded the Sherman Act's role" in prosecution and regulation of anticompetitive mergers. Phillip E. Areeda & Herbert E. Hovenkamp, *Antitrust Law* ⁋ 902 (4th ed. 2018). The State's complaint alleges a horizontal agreement to restrain trade in violation of section 1 of the Sherman Act. Dkt. 1. It does not allege a merger in violation of section 1. *Id.* While TDC and Franciscan are likely correct that "courts apply the same Section 7 standard and analysis to review merger claims brought under Section 1," Dkt. 159 at 9 (citing *United States v. Rockford Mem. Corp.*, 898 F.3d 1278, 1281–83 (7th Cir.), *cert. denied*, 498 U.S. 920 (1990)), if the State wished to allege a merger violation, it would have to amend its complaint. In the event that the Court granted a motion by the State to amend to include a merger theory, TDC and Franciscan could include any relevant affirmative defenses in their answer under Fed. R. Civ. P. 15(a)(3).

To the extent that TDC and Franciscan argue the State's experts are evaluating the case using analytical concepts inappropriate for a restraint of trade claim under section 1, that argument is beyond the scope of the instant motion, and may be addressed in a motion to exclude.

### 2. The TDC Weakened Competitor Defense

The parties agree that the weakened competitor defense would not apply to a *per se* violation of section 1. Dkt. 160 at 1 (quoting Dkt. 159 at 7) ("TDC and Franciscan admit that a 'weakened competitor defense does not apply to a *per se* claim because no justifications are permitted.'"). Conduct that is not a *per se* violation of section 1 may be

analyzed in depth under the rule of reason or under the abbreviated "quick look" analysis. *Cal. Dental Ass'n v. F.T.C.*, 526 U.S. 756, 770–71 (1999). "[M]ost antitrust claims are analyzed under a 'rule of reason,' according to which the finder of fact must decide whether the questioned practice imposes an unreasonable restraint on competition, taking into account a variety of factors, including specific information about the relevant business, its condition before and after the restraint was imposed, and the restraint's history, nature, and effect." *State Oil Co. v. Khan*, 522 U.S. 3, 10 (1997). In the rule of reason's burden-shifting analysis:

> (1) The plaintiff bears the initial burden of showing that the restraint produces significant anticompetitive effects within a relevant market. (2) If the plaintiff meets this burden, the defendant must come forward with evidence of the restraint's procompetitive effects. (3) The plaintiff must then show that any legitimate objectives can be achieved in a substantially less restrictive manner.

*O'Bannon v. Nat'l Collegiate Athletic Ass'n*, 802 F.3d 1049, 1069–70 (9th Cir. 2015) (quoting *Tanaka v. Univ. of S. Cal.,* 252 F.3d 1059, 1063 (9th Cir. 2001)).

The analysis weighs "whether the anticompetitive aspects of the challenged practice outweigh its procompetitive effects," *Paladin Assocs., Inc. v. Montana Power Co.*, 328 F.3d 1145, 1156 (9th Cir. 2003), but "does not support a defense based on the assumption that competition itself is unreasonable," *Nat'l Soc'y of Prof. Eng'rs. v. United States*, 435 U.S. 679, 696 (1978) ("*Professional Engineers*").

Here, the Court is not asked to decide which analysis may ultimately be appropriate in this case. Rather, the Court must resolve whether, if the agreements

between TDC and Franciscan are judged under the rule of reason, an affirmative weakened competitor defense would be legally relevant.

Affirmative defenses offer legal reasons why, accepting the claims as true, the defendant is not liable. *In re Wash. Mut., Inc., Secs., Derivative & ERISA Litigation*, No. 08–md–1919MJP, 2011 WL 1158387, at *1 (W.D. Wash. Mar. 25, 2011). A defense which seeks to negate an element of a plaintiff's claim or to "demonstrate that plaintiff has not met its burden of proof" is not an affirmative defense. *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

TDC and Franciscan's argument that they may present information about the weakened competitor defense to aid the Court's "understanding of the alleged conduct's impact on competition under the rule of reason," Dkt. 159 at 10, would not constitute an affirmative defense. The Court agrees with TDC and Franciscan that they may put forward any relevant evidence as part of their burden to show procompetitive effects justifying otherwise anticompetitive conduct if the case is judged under the rule of reason.

However, the Court agrees with the State that TDC and Franciscan have failed to cite any authority contradicting the proposition set out in the Court's July 24th Order, that restraint of trade claims under the Sherman Act are not defeated by affirmative defenses based on the competitive losses of a market participant. Dkt. 132 at 17; Dkt. 160 at 5 ("TDC and Franciscan fail to cite to a single case where a court has applied the weakened competitor defense . . . as an affirmative defense to a restraint of trade claim under the Sherman Act."). Moreover, TDC and Franciscan have not identified the elements of the

defense, or explained why this defense should be available when the Court has held the apparently similar failing-company defense is inapplicable to section 1 claims. Dkt. 132.

TDC and Franciscan cite four cases in support of the section in their response titled "A Weakened Competitor Defense Is Allowed Under the Rule of Reason." Dkt. 159 at 10–12 (citing *Bd. of Trade of City of Chi. v. United States*, 246 U.S. 231, 238 (1918); *United States v. General Dynamics Corp.*, 415 U.S. 486, 498 (1974); *Professional Engineers*, 435 U.S. at 692; *O'Bannon*, 802 F.3d at 1070). However, all arguments in that section assert that the weak financial condition of TDC is relevant to analysis under the rule of reason, not that a discrete weakened competitor affirmative defense exists or applies to claims under section 1. *See, e.g.*, Dkt. 159 at 10 (citing *O'Bannon*, 802 F.3d at 1070) ("The rule of reason focuses on the net effect of the challenged conduct on the relevant market."). None of the cited authorities involve a court's application of an affirmative weakened-competitor defense to a section 1 restraint of trade case, or even discuss how such a defense would be established.

The State relies on *Freeman v. San Diego Ass'n of Realtors*, 322 F.3d 1133, 1150–54 (9th Cir. 2003) in foreclosing the availability of an affirmative weakened competitor defense even under the rule of reason. Dkt. 153 at 8. While TDC and Franciscan distinguish *Freeman* as "a *per se* case not a rule of reason one," Dkt. 159 at 11, the Circuit's reasoning thoroughly analyzes the defendant's assertion that the rule of reason should apply to the case in place of *per se* analysis, in order to make room for various procompetitive justifications the defendant presented. *Freeman*, 322 F.3d at 1150–54.

While the Circuit does not explicitly discuss an affirmative weakened competitor defense, it explained:

> [i]t does not matter that Fallbrook and Valley Center would have operated at a loss in a competitive environment. Their precarious financial situation may have explained their intransigence, but it does not transform it into a viable defense. *If there is any argument the Sherman Act indisputably forecloses, it is that price fixing is necessary to save companies from losses* they would suffer in a competitive market.

*Id.* at 1152 n.24 (emphasis added). The State is correct that this language leaves no opening for an affirmative defense based on competitive weakness in a section 1 restraint of trade claim.

In sum, if the State prosecutes its claim under the rule of reason, TDC and Franciscan may present evidence relevant to carrying their burden under the rule's burden-shifting framework. However, no relief could be granted under an affirmative weakened competitor defense to a section 1 restraint of trade claim. Because no relief would be available, the State is entitled to judgment on the pleadings.

## IV.  ORDER

Therefore, it is hereby **ORDERED** that the State's motion for judgment on the pleadings as to the TDC weakened competitor defense, Dkt. 135, is **GRANTED**.

Dated this 19th day of February, 2019.

BENJAMIN H. SETTLE
United States District Judge