1
2
3
4
5
6
7

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

8

9  STATE OF WASHINGTON,                    NO. 3:17-cv-05690-BHS

10              Plaintiff,                 **CONSENT DECREE**

11      v.

12  FRANCISCAN HEALTH SYSTEM d/b/a
    CHI FRANCISCAN HEALTH;
13  FRANCISCAN MEDICAL GROUP; THE
    DOCTORS CLINIC, a Professional
14  Corporation; and WESTSOUND
    ORTHOPAEDICS, P.S.,
15
16              Defendants.

17

      **WHEREAS**, Plaintiff State of Washington, by and through its Attorney General
18
    ("State"), having conducted an investigation of the affiliations between Defendants Franciscan
19
    Health System and Franciscan Medical Group (collectively, "Franciscan"), The Doctors Clinic,
20
    A Professional Corporation ("TDC") and Westsound Orthopaedics, a Professional Services
21
    Corporation ("WSO"), and having filed a Complaint alleging violations of Section 1 of the
22
    Sherman Act, 15 U.S.C. § 1, Section 7 of the Clayton Act, 15 U.S.C. § 18, and the Washington
23
24  Unfair Business Practices - Consumer Protection Act, Wash. Rev. Code § 19.86.030 and
25
26

1

19.86.060, against Defendants in *State of Washington v. Franciscan Health System, et al.*, No. 3:17-cv-05690-BHS; and

**WHEREAS**, on March 1, 2019, the Court denied summary judgment for Franciscan and TDC on the State's claims challenging the TDC Affiliation pursuant to Sherman § 1 and Wash. Rev. Code § 19.86.030, and granted summary judgment for Franciscan and WSO on the State's claims challenging the WSO Acquisition pursuant to Clayton Act § 7 and Wash. Rev. Code § 19.86.060; final judgment has not yet been entered with respect to any of the State's claims; and

**WHEREAS**, WSO is a party to this Consent Decree only as to its and the State's release of claims, covenant not to sue, entry of final judgment, and attorneys' fees, costs, and appeal provisions; and WSO is not bound by the injunctions, notice, reporting or disclosure requirements of this Consent Decree; and

**WHEREAS**, to settle all of the State's claims, and without admitting liability or fault, Franciscan and TDC have agreed to undertake certain conduct and Franciscan has agreed to make certain divestitures; and

**WHEREAS**, this consent agreement is for settlement purposes only and does not constitute an admission by Defendants that any law has been violated or that the facts alleged in the Complaint are true; and

**WHEREAS**, Defendants agree that this Court has jurisdiction over them and the subject matter in this action; and

**WHEREAS**, Defendants agree to be bound by the provisions of this Consent Decree, pending its approval by the Court and thereafter;

CONSENT DECREE

NO. 3:17-cv-05690-BHS

2

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

**NOW THEREFORE**, there being no just reason for delay in resolving the claims alleged in Plaintiff's Complaint against Defendants, without trial or adjudication of any issue of fact or law on the State's claims relating to the TDC Affiliation, and upon the consent of the parties hereto, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

## I. JURISDICTION

1.      Defendant Franciscan Health System, doing business as CHI Franciscan, is a non-profit corporation organized and existing under the laws of Washington, with its headquarters at 1717 South J Street, Tacoma, Washington 98405.

2.      Defendant Franciscan Medical Group, also doing business as CHI Franciscan, is a non-profit corporation organized and existing under the laws of Washington, with its headquarters at 1313 Broadway Plaza, Suite 2000, Tacoma, Washington, 98201.

3.      Defendant The Doctors Clinic is a professional corporation organized and existing under the laws of Washington, with its headquarters at 9621 Ridgetop Boulevard NW, Silverdale, Washington, 98383.

4.      Defendant WSO is a professional services corporation organized and existing under the laws of Washington, with its headquarters located at 4409 NW Anderson Hill Road, Silverdale, Washington 98383. WSO sold its assets to CHI Franciscan on or about July 1, 2016, and its physicians became employees of Franciscan Medical Group. WSO now has no employees and no business activities.

5.      This Court has jurisdiction over the subject matter of this action and over each of the parties hereto. The Complaint states a claim upon which relief may be granted against

Franciscan and TDC under Section 1 of the Sherman Act, 15 U.S.C. § 1, and under Wash. Rev. Code § 19.86.030, alleged in the Complaint as a supplemental state claim.

6. The Washington State Attorney General has the authority to bring this action on behalf of the State pursuant to Section 16 of the Clayton Act, 15 U.S.C. § 26, and Wash. Rev. Code § 19.86.080.

7. Venue is proper in the United States District Court for the Western District of Washington.

## II. DEFINITIONS

**IT IS ORDERED** that, as used in this Consent Decree, the following definitions shall apply:

8. "Acquirer" means any Person that acquires the Divestiture Assets.

9. "Adult PCP Services" means primary care physician services provided to any person 18 years of age or older by Physicians who specialize in Family Medicine, General Practice, or Internal Medicine and whose services are paid for by Commercial Payers.

10. "Ambulatory Surgery Center" or "ASC" refers to the facility located at 2200 Northwest Myhre Road, Silverdale, WA 98383.

11. "AGO" means the Antitrust Division of the Washington State Attorney General's Office.

12. "Commercial Payer" means any HMO or other Person that sells commercial health insurance or other commercial health plans that cover the cost of Physician Services. It includes any Person that develops, leases, or sells access to networks of Physicians, for the creation of insurance products in the commercial market, including but not limited to commercial

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

insurance, third-party administrator services, and other health plan services offered by Aetna, Cigna, First Choice, Kaiser/Group Health, Premera Blue Cross, Cambia/Regence Blue Shield, and United Healthcare. It does not include government payers for public health insurance programs, such as Medicare and Medicaid, or private entities that sell or manage government insurance programs including but not limited to Managed Medicaid, Medicare Advantage, or Tricare, but do not sell HMO, health insurance, or health plans in the commercial market.

13. "Commercial Payer Contract" means a contract or agreement for Physician Services between Franciscan and a Commercial Payer, including but not limited to rates, definitions, terms, conditions, policies, and pricing methodology. It does not include contracts for government insurance programs such as Managed Medicaid, Medicare Advantage, or Tricare, even if a party to the contract also sells commercial HMO, health insurance, or health plans.

14. "Commercial Payer Department" means the Franciscan department that will be responsible for or oversee Contract Administration for both Franciscan and TDC.

15. "Commercial Payer Contracting Information" means information concerning Commercial Payer Contracts and negotiations with a specific Commercial Payer for Physician Services that is identifiable as being connected with or provided by that Commercial Payer, including charges, reimbursement rates, and documents and electronic health, billing and accounts receivable records otherwise reflecting this information; provided, however, that "Commercial Payer Contracting Information" shall not include: (i) information that is in the public domain or that falls in the public domain through no violation of this Consent Decree or breach of any confidentiality or nondisclosure agreement with respect to such information by

CONSENT DECREE

NO. 3:17-cv-05690-BHS

5

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Franciscan or TDC; (ii) information that becomes known to Franciscan or TDC from a third party that has disclosed that information legitimately; (iii) information that is required by law to be publicly disclosed; (iv) aggregate information concerning the financial condition of Franciscan or TDC; or (v) aggregate Commercial Payer information in which specific Commercial Payers are not identified or identifiable.

16.     "Contract Administration" means the act or acts associated with compliance with and implementation of final contract terms, such as payment monitoring, communication of Commercial Payer medical and administrative policies, utilization management, liaison to the business office, annual updates, and organizing Commercial Payer Contract-related budget information.

17.     "Defendant" or "Defendants" means Franciscan, WSO and/or TDC, as defined in this Consent Decree.

18.     "Divestiture Agreement" means any agreement between Franciscan and an Acquirer that receives the prior approval of the AGO to divest the Divestiture Assets, including all related ancillary agreements, schedules, exhibits, and attachments thereto, that have received the AGO's prior approval.

19.     "Divestiture Assets" means a controlling share of the Ownership Interest of the Ambulatory Surgery Center.

20.     "Effective Date" means the date this Consent Decree is entered by the Court.

21.     "Franciscan" means Franciscan Medical Group and Franciscan Health System (including Harrison Medical Center) collectively, d/b/a CHI Franciscan, along with their directors, officers, employees, agents, representatives, successors, and assigns; joint ventures,

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

subsidiaries, divisions, groups and affiliates controlled by CHI Franciscan, and the respective directors, officers, employees, agents, representatives, successors, and assigns of each. For purposes of this consent decree, the definition of Franciscan does not include The Doctors Clinic or WSO, and does not include CommonSpirit Health or its affiliates other than Franciscan.

22.     "Franciscan Negotiating Team" means the team responsible for negotiating a Commercial Payer Contract for Physician Services for Franciscan.

23.     "HMO" means an organization receiving a certificate of registration pursuant to Wash. Rev. Code 48.46.

24.     "Hospital-Based Physicians" means physicians for whom Franciscan contracts with payers solely for payment for inpatient and outpatient services the physician provides at facilities in which Franciscan owns the majority share of the facility and does not include those physicians when they practice at other locations, including but not limited to physician-owned clinics.

25.     "KP/BI" means the Kitsap Peninsula, including Bainbridge and Fox Islands and the central peninsula towns of Bremerton, Silverdale and Poulsbo, along with Gig Harbor located in Pierce County at the southern end of the peninsula.

26.     "Non-Commercial Payer Contracting Information" means any information relating to a contract that does not meet the definition of a Commercial Contract, including contracts for government insurance programs such as Managed Medicaid, Medicare Advantage, or Tricare.

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

27.     "Orthopedic Physician Services" means Physician Services customarily provided by, and actually provided by, board-certified or board-eligible orthopedic surgeons to treat injuries of the bones, joints, ligaments, tendons, and muscles and paid for by Commercial Payers.

28.     "Ownership Interest" means any and all rights, present or contingent, of Franciscan to hold any voting or nonvoting stock, share capital, equity or other interests or beneficial ownership in an entity.

29.     "Person" means any individual, partnership, joint venture, firm, corporation, association, trust, unincorporated organization, joint venture, or other business or government entity, and any subsidiaries, divisions, groups or affiliates thereof.

30.     "Physician Services" means Adult PCP Services or Orthopedic Physician Services provided to patients, paid for as professional services by Commercial Payers.

31.     "Physician" means a doctor of allopathic medicine ("M.D.") or a doctor of osteopathic medicine ("D.O.").

32.     "Physician Group" means an entity that employs Physicians.

33.     "Pre-existing Commercial Payer Contract" means a Commercial Payer Contract between a Commercial Payer and Franciscan that is in effect on the Effective Date of this Consent Decree.

34.     "PSA" means the Professional Services Agreement that TDC and Franciscan entered into on September 6, 2016.

35.     "Qualified Arrangement" means a Qualified Clinically-Integrated Joint Arrangement or a Qualified Risk-Sharing Joint Arrangement between (1) Franciscan or TDC on

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

the one hand; and (2) Physicians or Physician Groups other than Franciscan or TDC, on the other hand.

36. "Qualified Clinically-Integrated Joint Arrangement" means an arrangement to provide Physician Services at locations in KP/BI in which:

    a. all Physicians or Physician Groups who participate in the arrangement participate in active and ongoing programs of the arrangement to evaluate and modify the practice patterns of, and create a high degree of interdependence and cooperation among, the Physicians or the Physician Groups who participate in the arrangement, in order to control costs and ensure the quality of services provided through the arrangement; and

    b. any agreement concerning price or other terms or conditions of dealing entered into by or within the arrangement is reasonably necessary to obtain significant efficiencies that result from such integration through the arrangement.

37. "Qualified Risk-Sharing Joint Arrangement" means an arrangement to Provide Physician Services at locations in KP/BI in which:

    a. all Physicians or Physician Groups who participate in the arrangement share substantial financial risk through their participation in the arrangement and thereby create incentives for the Physicians or Physician Groups who participate jointly to control costs and improve quality by managing the provision of Physician Services such as risk-sharing involving:

        i. the provision of Physician Services at a capitated rate;

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

ii.   the provision of Physician Services for a predetermined percentage of premium or revenue from Payers;

iii.   the use of significant financial incentives (e.g., substantial withholds) for Physicians or Physician Groups who participate to achieve, as a group, specified cost containment or quality improvement goals, or

iv.   the provision of a complex or extended course of treatment that requires the substantial coordination of care by Physicians in different specialties offering a complementary mix of services, for a fixed, predetermined price, when the costs of that course of treatment for any individual patient can vary greatly due to the individual patient's condition, the choice, complexity, or length of treatment, or other factors; and

b.   any agreement concerning price or other terms or conditions of dealing entered into by or within the arrangement is reasonably necessary to obtain significant efficiencies that result from such integration through the arrangement.

38.   "TDC" means The Doctor's Clinic, a professional corporation organized and existing under the laws of Washington, with headquarters at 9621 Ridgetop Boulevard NW, Silverdale, WA 98383.

39.   "TDC Affiliation" means the 2016 affiliation of Franciscan with TDC, consisting of the following principal agreements: (1) the Asset Purchase Agreement by which Franciscan acquired certain assets TDC used to provide medical services to patients; (2) the Asset Lease Agreement, by which Franciscan leased certain assets TDC used to provide medical services to its patient; (3) the Professional Services Agreement, by which TDC agreed to perform medical

services exclusively for Franciscan's patients and through which Franciscan agreed to pay TDC for these services and provide TDC the assets needed to perform the services; and (4) the Management Services Agreement by which Franciscan engaged TDC to provide certain management, administrative, consulting and other related services on Franciscan's behalf. "TDC Affiliation" also includes related ancillary agreements, amendments, schedules, exhibits, and attachments thereto.

40. "TDC Negotiating Team" means the team responsible for negotiating the prices and terms on which TDC will provide Physician Services when a Commercial Payer elects to negotiate those terms separately from Franciscan.

41. "WSO Acquisition" means the July 1, 2016 agreement between Franciscan and WSO whereby Franciscan acquired all of the assets of WSO, a physician practice with six orthopedists, and employed those physicians.

42. "wRVU" means fee-for-service, productivity-based compensation tied to work Relative Value Units used by the Centers for Medicare and Medicaid Services to set Medicare payment rates.

### III. APPLICABILITY

43. The injunction, notice, reporting and disclosure provisions of this Consent Decree shall apply to Franciscan and TDC, their successors and assigns, their subsidiaries, affiliates, directors, officers, managers, agents, and employees. Those provisions shall not apply to CommonSpirit Health or its subsidiaries, affiliates, directors, officers, managers, agents, and employees, other than Franciscan. The release, covenant not to sue, and final judgment, costs, attorneys' fees, and appeal provisions of this Consent Decree shall apply to all Defendants, and

their successors and assigns, their subsidiaries, affiliates, directors, officers, managers, agents, and employees.

44.    Within thirty (30) days after the Effective Date, Defendants shall send by first class mail, return receipt requested, a copy of this Consent Decree to each member of their Boards of Directors, Franciscan's Executive Leadership Team, Franciscan and TDC attorneys and corporate responsibility officers assigned to Franciscan and TDC, respectively, and each of Franciscan and TDC's officers or employees who have responsibility for: (i) negotiating commercial payer contracts; (ii) recommending, designing, or implementing transactions or contracts with Physicians or Physician Groups.

45.    For seven (7) years following the Effective Date, within ten (10) days of appointment of any new employee of Franciscan or TDC described in the preceding paragraph, Franciscan or TDC shall send by first class mail, return receipt requested, a copy of this Consent Decree to such employee.

46.    Franciscan and TDC shall notify the AGO in writing at least thirty (30) days prior to any proposed change that may affect their compliance obligations under this Consent Decree, such as dissolution, assignment for the benefit of creditors, sale resulting in emergence of a successor entity, creation or dissolution of subsidiaries, or any other change, that, in Defendants' reasonable judgment, may affect compliance obligations under this Consent Decree. A copy of this Consent Decree shall be given to any successor entity.

47.    All parties agree that this Consent Decree is entered voluntarily and represents the entire agreement of the parties. All parties agree and represent that any persons signing this Consent Decree have been authorized to execute this Consent Decree.

CONSENT DECREE

NO. 3:17-cv-05690-BHS

12

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

# IV.    FUTURE CONTRACT PROHIBITIONS AND NOTIFICATION REQUIREMENTS

48.    For a period commencing on the Effective Date and continuing for seven (7) years, Franciscan and TDC shall not, directly or indirectly, or through any corporate or other device, on behalf of any Physician with respect to Physician Services in KP/BI:

   a.  Enter into, adhere to, participate in, maintain, organize, implement, enforce, or otherwise facilitate any combination, conspiracy, agreement, or understanding between or among any Physicians who are not their employees, when they already employ Physicians who practice in the same specialty:

      i.   To negotiate on behalf of any Physician with any Commercial Payer;

      ii.  To deal, refuse to deal, or threaten to refuse to deal with any Commercial Payer regarding any term, condition, or requirement upon which any Physician deals, or is willing to deal, with any Commercial Payer, including, but not limited to, price terms; or

      iii. Not to deal individually with any Commercial Payer, or not to deal with any Commercial Payer other than through Franciscan or TDC.

   b.  Exchange or facilitate in any manner the exchange or transfer of information among such non-employee Physicians concerning any such Physician's willingness to deal with a Commercial Payer, or the terms or conditions, including price terms, on which the Physician is willing to deal with a Commercial Payer;

   c.  Attempt to engage in any action prohibited by subparts a or b of this Paragraph; and

CONSENT DECREE

NO. 3:17-cv-05690-BHS

13

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

d. Encourage, suggest, advise, pressure, induce, or attempt to induce any Person to engage in any action that would be prohibited by subparts a through c of this Paragraph.

**Provided, however,** that nothing in § IV shall prohibit any agreement or conduct that, subject to the requirements of this Consent Decree: (1) is reasonably necessary to form, participate in, or take any action in furtherance of a Qualified Risk-Sharing Joint Arrangement or a Qualified Clinically-Integrated Joint Arrangement; (2) relates to an arrangement that existed when this Consent Decree was entered, including RHN, (3) relates to arrangements by which Franciscan pays Hospital-Based Physicians to provide services at facilities in which Franciscan owns the majority share of the facility, and bills for those services under Franciscan's Commercial Payer Contracts, (4) relates to the employment of physicians or recruitment of physicians as potential employees of Franciscan or TDC, (5) relates to complying with any law or regulation regarding out-of-network or "surprise" balance billing by providers who contract with Defendants to provide services to Defendants' patients, or (6) relates to a transaction or arrangement for which Defendants gave notice pursuant to § IV, and for which the time periods specified in § IV have expired.

49. Franciscan and TDC agree that for a period commencing on the Effective Date and continuing until the earlier of seven (7) years from that date or the effective date of a Washington State law that would otherwise require them to notify the AGO of transactions not reportable under Hart-Scott-Rodino: neither Franciscan nor TDC shall, directly or indirectly,

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

through subsidiaries or otherwise, without providing sixty (60) days advance written notice to the AGO:

    a.  Enter into any arrangement with a group of Physicians including seven or more Physicians, who are not Franciscan employees, when they already employ Physicians who practice in the same specialty within a geographic area that is within 15 (fifteen) miles of any of the facilities at which the non-employed Physicians practice, under which Franciscan will establish Commercial Payer contracts for those non-employed Physicians.

    b.  If, within thirty (30) days after giving notice, the AGO makes a written request for additional information or materials, Franciscan shall not consummate the transaction until thirty (30) days after substantially complying with such request.

    c.  This Consent Decree does not prohibit such arrangements or transactions, and they may proceed after notice and expiration of the time periods set forth above. Nothing in this section shall be construed, however, as a limit on the AGO's authority to challenge such arrangements or transactions under the Consumer Protection Act or any other applicable state or federal law at any time.

    d.  Notices, requests for additional information, and information and documents provided to the AGO under § IV shall be kept confidential by the State, and shall not be subject to disclosure under the Washington Public Records Act or any other statute.

    e.  This notice requirement does not apply to transactions in which Physicians become employees of Franciscan or TDC.

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

f. This notice requirement does not apply to arrangements that existed before this Consent Decree was entered; however, this notice requirement does apply to amendments of such arrangements that result in Franciscan establishing Commercial Payer Contracts on behalf of Physicians for whom it previously did not.

g. This notice requirement does not apply to the Rainier Health Network ("RHN").

h. This notice requirement does not apply to arrangements or transactions for which notice has previously been given pursuant to § IV.

50. Franciscan and TDC agree that until the earlier of seven (7) years from the Effective Date or the effective date of Washington State law that would otherwise require Franciscan and TDC to notify the AGO of transactions not reportable under Hart-Scott-Rodino, pursuant to each new Qualified Arrangement or amendment thereto after this Consent Decree is entered, in which Franciscan or TDC is a participant, except for those contracts under which Franciscan or TDC is, or will be, paid on a capitated (per member per month) rate by the Payer, Franciscan and TDC shall notify the Attorney General in writing at least sixty (60) days prior to:

a. Participating in, organizing, or facilitating any discussion or understanding with or among any Physicians or Physician Groups in such Qualified Arrangement relating to price terms or conditions of dealing with any Commercial Payer; or

b. Contracting with a Commercial Payer, pursuant to a Qualified Arrangement, concerning price or other terms or conditions of dealing with any Commercial Payer, on behalf of any Physician or Physician Group in such Qualified Arrangement.

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Provided, that:

    a.  This notice requirement does not apply to transactions in which Physicians become employees of Franciscan or TDC.

    b.  This notice requirement does not apply to arrangements that existed before this Consent Decree was entered; however, this notice requirement does apply to amendments of such arrangements that result in Franciscan establishing Commercial Payer Contracts on behalf of Physicians for whom it previously did not.

    c.  This notice requirement does not apply to the Rainier Health Network ("RHN").

    d.  This notice requirement does not apply to arrangements or transactions for which notice has previously been given pursuant to § IV.

51.    Any notification under § IV shall include the following information:

    a.  the total number of Physicians and the number of Physicians in each specialty Participating in the arrangement;

    b.  a description of the arrangement, including its purpose and geographic area of operation;

    c.  a description of the nature and extent of the integration and the efficiencies resulting from the arrangement;

    d.  an explanation of the relationship of any agreement on prices, or contract terms related to price, to furthering the integration and achieving the efficiencies of the arrangement;

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

e. a description of any procedures proposed to be implemented to limit possible anticompetitive effects resulting from the arrangement or its activities;

**Provided further** that:

    i.  if, within fifteen (15) days from the date of the Attorney General's receipt of the Notification, the Attorney General makes a written request for additional information, then Franciscan or TDC shall not enter into the arrangement described in the Notification prior to the expiration of thirty (30) days after substantially complying with such request, or such shorter waiting period as may be granted in writing by the Attorney General;

    ii.  the expiration of any waiting period described herein without a request for additional information, or without the initiation of an enforcement proceeding, shall not be construed as a determination by the Attorney General that the proposed Arrangement does or does not violate this Consent Decree or any law enforced by the Attorney General;

    iii. the absence of the notice that the proposed Arrangement has been rejected, regardless of a request for additional information, shall not be construed as a determination by the Attorney General that the proposed Arrangement has been approved;

    iv. Notices, requests for additional information, and information and documents provided to the AGO under § IV shall be kept confidential by the State, and shall not be subject to disclosure under the Washington Public Records Act or any other statute.

CONSENT DECREE

NO. 3:17-cv-05690-BHS

18

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

52.     On January 1, 2020, the provisions of Substitute House Bill 1607 ("AN ACT Relating to notice of material changes to the operations or governance structure of participants in the health care marketplace"), shall substitute for the notice requirements of this Consent Decree, and § IV of this Consent Decree shall be of no further force or effect, except that paragraph 48 will continue to remain in effect.

## V.     INCENTIVE AND QUALITY COMPENSATION

53.     Franciscan and TDC shall amend the PSA to remove the following clause from Exhibit A, section 3.g in the PSA: "To the extent that FMG establishes any 'incentive compensation' or quality bonus amount for FMG providers under the terms of the FMG Compensation Plan, these do not affect the determination of the FMG Rates." This does not require Franciscan or TDC to offer any incentive compensation or quality bonus to any physician.

## VI.     SEPARATE COMMERCIAL PAYER CONTRACT NEGOTIATIONS FOR TDC PHYSICIAN SERVICES

54.     Franciscan shall offer each Commercial Payer the option to negotiate the price and other terms of Commercial Payer Contracts for Physician Services provided by TDC Physicians at locations in KP/BI separately and independently from Commercial Payer Contracts for Physician Services provided by Franciscan.

55.     If a Commercial Payer elects to negotiate separately for Physician Services provided by TDC Physicians at locations in KP/BI, agreed terms will be implemented as a confidential amendment to the Commercial Payer's contract with Franciscan. TDC will then bill the payer on behalf of Franciscan as it does today. Franciscan will receive the revenue, and will pay TDC on a wRVU basis and pay TDC's expenses pursuant to the PSA as it does today.

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

56.     For Commercial Payers who elect separate negotiations, Franciscan shall not:

a.  make any Commercial Payer Contract for Physician Services for Franciscan contingent on the Commercial Payer's agreement to prices or terms for Physician Services provided by TDC Physicians; or

b.  make the availability of any price or term included in a Commercial Payer Contract for Physician Services for Franciscan contingent on the Commercial Payer's agreement to prices or terms for Physician Services provided by TDC Physicians.

57.     No later than sixty (60) days after the Effective Date, Franciscan and TDC shall establish and thereafter maintain the Franciscan Negotiating Team and the TDC Negotiating Team, which teams shall operate independent of each other and negotiate prices and other terms for Physician Services at locations in KP/BI, separately and in competition with each other and other providers of Physician Services for those Commercial Payers who elect to negotiate separately with TDC and Franciscan for Physician Services.

a.  The TDC Negotiating Team (which may include consultants or other agents hired to conduct the negotiations) shall be exclusively responsible for negotiating prices and other terms for Physician Services provided at locations in KP/BI by TDC Physicians when Payers have elected to negotiate separate prices and other terms pursuant to § VI of this Consent Decree.

b.  The Franciscan Negotiating Team shall be exclusively responsible for negotiating Commercial Payer Contracts for Physician Services provided at locations in

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

KP/BI for Franciscan when Payers have elected to negotiate separate prices and other terms pursuant to § VI of this Consent Decree.

58.     Commercial Payer Contracting Information with respect to separately-negotiated prices and terms for Physician Services provided at locations in KP/BI by TDC Physicians shall be kept separate and confidential from Franciscan Commercial Payer Contracting Information.

a.  Commercial Payer Contracting Information with respect to such contracts shall not, directly or indirectly, be transmitted to or received by the Franciscan Negotiating Team, except as otherwise provided in this Consent Decree; and

b.  Commercial Payer Contracting Information with respect to Franciscan shall not, directly or indirectly, be transmitted to or received by the TDC Negotiating Team.

59.     No later than thirty (30) days after the Effective Date, Franciscan and TDC shall implement procedures and protections to ensure that Commercial Payer Contracting Information relating to separately-negotiated prices and terms for Physician Services provided at locations in KP/BI for Franciscan, on the one hand, and TDC, on the other, is maintained separate and confidential, including but not limited to:

a.  establishing a firewall-type mechanism that:

i.  prevents the TDC Negotiating Team from requesting, receiving, sharing, or otherwise obtaining any Commercial Payer Contracting Information with respect to Franciscan's separately-negotiated contracts for Physician Services provided at locations in KP/BI; and

ii. prevents the Franciscan Negotiating Team from requesting, receiving, sharing, or otherwise obtaining any Commercial Payer Contracting

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Information with respect to separately-negotiated prices and terms for Physician Services provided at locations in KP/BI by TDC Physicians;

b. causing each of Franciscan's employees and agents with access to Commercial Payer Contracting Information with respect to Franciscan's separately-negotiated contracts for Physician Services provided at locations in KP/BI to maintain the confidentiality required by the terms and conditions of this Consent Decree, including but not limited to:

    i. requiring each such employee or agent to sign a statement that the individual will comply with these terms;

    ii. maintaining complete records of all such statements at Franciscan's headquarters; and

    iii. providing an officer's certification to the AGO stating that such statements have been signed by all relevant employees and agents, identifying such employees and agents, and certifying that no TDC Negotiating Team member has had authorized access to the Commercial Payer Contracting Information with respect to Franciscan's separately-negotiated contracts for Physician Services provided at locations in KP/BI.

c. causing each of Franciscan's employees and agents with access to Commercial Payer Contracting Information with respect to separately-negotiated prices and terms for Physician Services provided at locations in KP/BI by TDC Physicians

CONSENT DECREE

NO. 3:17-cv-05690-BHS

22

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

to maintain the confidentiality required by the terms and conditions of this Consent Decree, including but not limited to:

    i. requiring each such employee or agent to sign a statement that the individual will comply with these terms;

    ii. maintaining complete records of all such statements at Franciscan's headquarters; and

    iii. providing an officer's certification to the AGO stating that such statements have been signed by all relevant employees and agents, identifying such employees and agents, and certifying that no Franciscan Negotiating Team member has had authorized access to the Commercial Payer Contracting Information with respect to separately-negotiated prices and terms for Physician Services provided at locations in KP/BI by TDC Physicians.

d. causing each of TDC's employees and agents with access to Commercial Payer Contracting Information with respect to separately-negotiated prices and terms for Physician Services provided at locations in KP/BI by TDC Physicians to maintain the confidentiality required by the terms and conditions of this Consent Decree, including but not limited to:

    iv. requiring each such employee or agent to sign a statement that the individual will comply with these terms;

    v. maintaining complete records of all such statements at TDC's headquarters; and

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

vi. providing an officer's certification to the AGO stating that such statements have been signed by all relevant employees and agents and identifying such employees and agents.

60.    Nothing in this Consent Decree shall prevent the TDC Negotiating Team from:

a. requesting, receiving, sharing, using or otherwise obtaining Commercial Payer Contracting Information with respect to Physician Services provided at locations in KP/BI by TDC Physicians, except that such Commercial Payer Contracting Information shall not be shared with the Franciscan Negotiating Team; or

b. requesting, receiving, sharing, using or otherwise obtaining non-Commercial Payer Contracting Information relating to Franciscan Medical Group, Harrison Medical Center or the entire Franciscan system, including, but not limited to, information related to costs, quality, patient mix, service utilization, experience data, budgets, capital needs, expenses, and overhead.

61.    Nothing in this Consent Decree shall prevent the Franciscan Negotiating Team from:

a. requesting, receiving, sharing, using, or otherwise obtaining Commercial Payer Contracting Information with respect to Physician Services for Franciscan, except that such Commercial Payer Contracting Information shall not be shared with the TDC Negotiating Team; or

b. requesting, receiving, sharing or otherwise obtaining non-Commercial Payer Contracting Information relating to Franciscan Medical Group, Harrison Medical Center or the entire Franciscan system, including, but not limited to, information

CONSENT DECREE

NO. 3:17-cv-05690-BHS

24

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

related to costs, quality, patient mix, service utilization, experience data, budgets, capital needs, expenses, and overhead.

62. If a Commercial Payer does not elect to negotiate separately after being offered the option to do so, nothing in this Consent Decree shall prohibit Franciscan from requesting or obtaining Commercial Payer Contracting Information with respect to Physician Services for Franciscan and for Physician Services provided at locations in KP/BI by TDC Physicians for that particular Commercial Payer or from using that Commercial Payer Contracting Information for that particular Commercial Payer with respect to the negotiations and contracting for that particular Commercial Payer Contract.

63. Nothing in this Consent Decree shall prevent the Commercial Payer Department from requesting Commercial Payer Contracting Information from the Franciscan Negotiating Team or the TDC Negotiating Team, ***provided, however***, that:

    a. the Commercial Payer Contracting Information that is requested and obtained is used solely for the purpose of Contract Administration, and

    b. the Commercial Payer Department is prohibited from providing, sharing, or otherwise making available Commercial Payer Contracting Information:

        i. from the TDC Negotiating Team to or with the Franciscan Negotiating Team; or

        ii. from the Franciscan Negotiating Team to or with the TDC Negotiating Team.

64. Franciscan shall, solely at the option of the Commercial Payer and with no penalty to the Commercial Payer, allow Commercial Payers with Pre-existing Commercial Payer

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Contracts the option to re-open and renegotiate their contracts solely with regard to Physician Services provided by TDC Physicians under the terms of this Consent Decree:

    a.   No later than thirty (30) days after the Effective Date, Franciscan shall notify all Commercial Payers with a Pre-existing Commercial Payer Contract of their rights under this Consent Decree, and, for each such Pre-existing Commercial Payer Contract, offer the opportunity to negotiate a separate Commercial Payer Contract for Physician Services provided at locations in KP/BI for TDC on the one hand and Franciscan on the other hand.

    b.   Franciscan shall send notification of the above requirement and a copy of this Consent Decree to the Commercial Payer employees who supervise negotiation of, and negotiate contracts for, each such Commercial Payer by first class mail or e-mail, with return receipt requested, and keep a file of such receipts for three (3) years after the Effective Date.

          i.   Franciscan shall maintain complete records of all such notifications at Franciscan's headquarters, and

         ii.   Franciscan shall provide an officer's certification to the AGO stating that such notification program has been implemented and that Franciscan has complied with its provisions.

65.    No later than ten (10) days after being contacted by a Commercial Payer to negotiate a Commercial Payer Contract, Franciscan shall notify said Commercial Payer of its rights under this Consent Decree by sending a copy of this Consent Decree to the Commercial Payer employees who supervise negotiation of, and negotiate contracts for, each such

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Commercial Payer by first class mail or e-mail, with return receipt requested. Franciscan shall maintain complete records of all such notifications and return receipts at Franciscan's headquarters and shall include in reports filed to the AGO an officer's certification to the AGO stating that such notification requirement has been implemented and is being complied with.

66.     Franciscan shall:

a.  Within thirty (30) days after the Effective Date, submit a verified written report to the AGO setting forth in detail:

   i.  the manner and form in which it will comply with Paragraphs [54-57] of this Consent Decree, including but not limited to the composition, structure, and intended operation of the Franciscan Negotiating Team and the TDC Negotiating Team, including but not limited to who will comprise the teams, who will supervise the teams, who will approve the Commercial Payer Contracts, what instructions the team members will receive, and other details necessary for the AGO to evaluate Franciscan's compliance with this Consent Decree; and

   ii.  the manner and form in which Franciscan will comply with Paragraphs [58-63] of this Consent Decree.

b.  One (1) year from the Effective Date, annually for the next seven (7) years on the anniversary of the Effective Date, submit a verified written report to the AGO setting forth in detail the manner and form in which it has complied and is complying with the Order. In each such verified written report, include, among other things that are required from time to time, the following:

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

i. a full description of the efforts being made to comply with each Paragraph of the Consent Decree;

ii. the identity of each member of the Franciscan Negotiating Team, the TDC Negotiating Team, and the Commercial Payer Department.

c. Within sixty (60) days after Effective Date, and every sixty (60) days thereafter until Franciscan has fully complied with paragraphs [64 and 44], and has obtained the signed statements of all of Franciscan's employees and agents described in Paragraph [59] and who are employed or otherwise retained by Franciscan as of the Effective Date, submit a verified written report to the AGO setting forth in detail the manner and form in which it has complied and is complying with those paragraphs of the Consent Decree.

## VII. DIVESTITURE

67. No later than one hundred twenty calendar days after the entry of this Consent Decree, Franciscan shall complete the divestiture of the Divestiture Assets in a manner consistent with this Consent Decree to an Acquirer acceptable to and approved in advance by both Franciscan and the AGO. Franciscan's time for divesting the Divestiture Assets will be tolled during the pendency of any proceedings relating to a Certificate of Need for the divestiture, including any request for a determination of whether a Certificate of Need is required. The AGO, in its sole discretion, may agree to one or more extensions of this time period. The Court may grant extensions upon motion, for good cause shown. Franciscan agrees to use its best efforts to divest the Divestiture Assets as expeditiously as possible. Franciscan may retain a minority interest in the ASC, and have reserved powers as a minority owner pursuant to the terms that

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Franciscan and the Acquirer negotiate through an arms-length transaction and agree upon as reflected in the Divestiture Agreement.

68.     Not later than ten (10) days prior to its execution, Franciscan shall furnish a copy of any Divestiture Agreement to the AGO.

69.     Franciscan shall not, without prior notification to the AGO, directly or indirectly, through subsidiaries, partnerships, or otherwise;

    a.  Acquire a controlling interest in the ASC;

    b.  Acquire any stock, share capital, equity or other interest in any concern, corporate or non-corporate, that owns or has a controlling interest in the ASC.

70.     If Franciscan has not accomplished such divestiture(s) within the time required by this order (including any extensions authorized under this order), Franciscan shall promptly file with the Court a report setting forth (1) Franciscan's efforts to accomplish the required divestiture, (2) the reasons why the required divestiture has not been accomplished, and (3) Franciscan's recommendations. To the extent such reports contain information that Franciscan deems confidential, it shall follow the procedure outlined in the Stipulated Protective Order in this matter, and file a redacted version of the report on the public docket of the Court. Franciscan shall at the same time furnish such report to the AGO, which shall have the right to make additional recommendations consistent with the purpose of this Consent Decree, and the AGO reserves the right to seek the appointment of a trustee for the purposes of effectuating the divestiture. To the extent necessary, the parties agree to reserve for argument before the Court the extent of the trustee's authority. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of the Consent Decree.

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

# VIII.  ASSET MAINTENANCE

71.     From the date Franciscan signs this Consent Decree and until the Divestiture Assets have been divested, Franciscan shall preserve the Ambulatory Surgery Center as an ongoing businesses and not take any affirmative action, or fail to take any action within its control, as a result of which the viability, competitiveness, and marketability of the Ambulatory Surgery Center would be diminished.

72.     Nothing in this paragraph is intended to prevent Franciscan from increasing the amount, complexity, or acuity of procedures performed at the Ambulatory Surgery Center prior to effectuating the Divestiture.

73.     The purpose of this Section VIII is to preserve the Ambulatory Surgery Center as a viable, competitive, and ongoing business until the assets are transferred to Acquirer.

# IX.     PATIENT NOTIFICATION OF COMPETITIVE ALTERNATIVES

74.     Within ten (10) days of the Effective Date, Franciscan and TDC shall provide notice to all patients being referred for laboratory and imaging services in KP/BI that the patient may choose to obtain these services at a facility that is not affiliated with Franciscan or TDC.

75.     Franciscan and TDC must provide this notice in writing at or before the time of the referral. The notice must include at least two alternative options on KP/BI that are not affiliated with Franciscan or TDC, if there are at least two such options available. The notice may be provided with other legally required notices in the electronic disclosure and consent forms that patients read and sign on an iPad at or before the time of the referral, provided that the patient is required to separately sign the laboratory and imagining services notice.

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

76.     Franciscan and TDC shall not deny, limit, or withdraw a referral, if a patient chooses to have services performed at a non-affiliated facility.

77.     The notice in this Section shall be in a format approved in advance by the AGO.

## X.     MONETARY RELIEF

78.     Within thirty (30) days of the Effective Date, Defendants shall pay two million ($2,000,000) United States Dollars by wire transfer to the State of Washington, Office of the Attorney General. These funds shall be distributed solely as *cy pres* grants to be used for the purpose of increasing access to healthcare for residents of KP/BI and/or availability of healthcare services in KP/BI. All grants shall be awarded and disbursed at the sole discretion of the Attorney General of Washington. The AGO represents and warrants that it has provided to Defendants bank account information sufficient to facilitate the wire transfer prior to presenting this Consent Decree to the Court.

79.     To determine whether a new Certificate of Need is required under § VII, within fourteen (14) days after a Divestiture Agreement has been executed, Franciscan shall work with the Acquirer to submit a request to the Washington Department of Health ("DOH") Certificate of Need Program in the name of the Acquirer for a Determination of Reviewability pursuant to WAC 246-310-050.

80.     Franciscan shall use its best efforts to complete the Determination of Reviewability, including, but not limited to, responding promptly to any inquiries or requests for information from DOH.

81.     If the DOH determines that a Certificate of Need is not required, Defendants shall wire an additional five hundred thousand United States Dollars ($500,000) to the State of

CONSENT DECREE

NO. 3:17-cv-05690-BHS

31

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

Washington, Office of the Attorney General to be used in the same manner as provided in this § X. The Defendants shall do so within fourteen (14) days after a final and non-appealable decision is rendered on the Determination of Reviewability by DOH.

## XI. ENFORCEMENT AND RETENTION OF JURISDICTION

82. Jurisdiction is retained by this Court for the purpose of enabling the parties to this Consent Decree to apply to this Court at any time for such further orders and directions as may be necessary or appropriate for the construction or implementation of any of the provisions of this Consent Decree, and for the enforcement of compliance, and to remedy violations of this Consent Decree.

83. In any contempt of court proceeding initiated to enforce this Consent Decree due to a violation of its terms, the AGO may seek, and the Court shall have the authority to grant, all remedies available in such a proceeding.

84. Nothing herein precludes the AGO from enforcing the provisions of this Consent Decree, or from pursuing any law enforcement action with respect to the acts or practices of Defendant not covered by this Consent Decree or any acts or practices conducted after the date of entry of this Consent Decree.

85. The State releases Defendants from all antitrust claims that the State asserted or could assert based on the conduct alleged in the Complaint, and covenants not to sue on these claims or for conduct that is obligated by this Consent Decree.

86. A final judgment is hereby entered dismissing the Complaint with prejudice in its entirety, with the State and all Defendants to each bear their own attorneys' fees and costs. All parties waive any right to appeal the entry of final judgment, the entry of this Consent Decree

CONSENT DECREE

NO. 3:17-cv-05690-BHS

32

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

or any order or judgment before entry of this Consent Decree, including the summary judgment of the State's claim against WSO.

87.     Nothing in this Consent Decree shall be construed to limit or bar any other governmental entity (other than the State of Washington and its officials, agencies, and subdivisions) from pursuing other available claims or remedies against Defendant.

88.     This Consent Decree shall be construed and interpreted to effectuate the intent of the parties, which is to provide for a complete resolution of all antitrust claims that the State asserted or could assert based on the conduct alleged in the Complaint with respect to all Defendants.

89.     Neither the existence of this Consent Decree nor anything contained herein shall be deemed or construed to be an admission by any Defendant or evidence of any wrongdoing or violation of law by any Defendant, or the truth of any of the claims or allegations contained in the Complaint.

90.     Under no circumstances shall this Consent Decree or the names of the State of Washington or the Office of the Attorney General, Antitrust Division, or any of its employees or representatives be used by Defendant's agents or employees in connection with the promotion of any product or service or an endorsement or approval of Defendant's past or future practices.

91.     Solely for the purpose of determining or securing compliance with this Consent Decree, Defendants authorize their attorneys of record in this case to accept service of a motion by the AGO to enforce or interpret this Consent Decree.

CONSENT DECREE

NO. 3:17-cv-05690-BHS

33

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

92.     Unless otherwise provided in this Consent Decree, interpretation, enforcement, or modification of this Decree shall be governed by federal law to the extent applicable; otherwise, the laws of the State of Washington shall apply.

## XII.    RECORDS RETENTION AND COMPLIANCE INSPECTION

93.     For the purpose of determining or securing compliance with this Consent Decree, and subject to any legally recognized privilege, and upon written request and twenty one (21) days' notice to Franciscan and TDC made to its headquarters address, Franciscan and TDC shall, without restraint or interference, permit any duly authorized representative of the AGO:

   a.   Access, during business office hours of Franciscan or TDC and in the presence of counsel, to all facilities and access to inspect and copy all books, ledgers, accounts, correspondence, memoranda, calendars, and all other records and documents in its possession, or under its control, relating to Franciscan's and TDC's compliance with this Consent Decree, which copying services shall be provided by Franciscan and TDC at the request of the authorized representative(s) of the AGO and at the expense of Franciscan and TDC; and

   b.   To interview officers, directors, or employees of Franciscan and TDC, who may have counsel present, regarding such matters.

94.     In addition to the provisions in § VI, upon the written request of duly authorized representative of the AGO, Franciscan and TDC shall submit written reports, under oath if requested, relating to any of the matters contained in this Consent Decree as may be requested.

95.     No information or documents obtained through the foregoing means shall be divulged by the AGO to any other person other than an authorized representative of the AGO,

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

except in the course of legal proceedings to which the AGO is a party (including grand jury proceedings), or for the purpose of securing compliance with this Consent Decree, or as otherwise required by law.

## XIII.  NOTIFICATIONS

96.     All notices issued pursuant to this Consent Decree shall be issued with a reference to the case caption and number, to the following:

To Plaintiff State of Washington:

> Erica Koscher
> Amy Hanson
> Assistant Attorneys General
> Antitrust Division
> Office of the Attorney General of Washington
> 800 5th Ave, Ste. 2000
> Seattle, WA 98104

To Defendants:

Franciscan and WSO

> Mitchell D. Raup
> Matthew Hans
> Herbert Allen
> Polsinelli PC
> 1401 I Street NW, Suite 800
> Washington D.C. 20005

The Doctor's Clinic

> Douglas C. Ross
> David A. Mass
> Douglas E. Litvack
> Davis Wright Tremaine LLP
> 920 5th Avenue, Suite 3300
> Seattle, WA 98104

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA  98104
(206) 464-7744

## XIV.   GENERAL PROVISIONS

97.     This Consent Decree shall expire seven (7) years from the date of entry; provided, however, that this Consent Decree may remain in effect after completion of such seven (7) year period solely for the purpose of determining or enforcing compliance during its seven-year period.

98.     This Consent Decree shall not benefit any third party, and shall not be construed to provide any rights to third parties.

99.     If any part of this Consent Decree is hereafter adjudged by this Court to be unenforceable, the remaining provisions of this Consent Decree shall stay in full force and effect.

**BASED UPON THE RECORD BEFORE THIS COURT,** the Court finds that entry of this Consent Decree is fair, equitable, and in the public interest.


Dated this 28th day of June, 2019.



_____
BENJAMIN H. SETTLE
United States District Judge


**Respectfully submitted by:**


FOR PLAINTIFF

ROBERT W. FERGUSON
Attorney General

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

*/s/ Jonathan A. Mark*

JONATHAN A. MARK, WSBA No. 38051
AMY N.L. HANSON, WSBA No. 28589
ERICA A. KOSCHER, WSBA No. 44281
Assistant Attorneys General
Antitrust Division
Office of the Attorney General of Washington
800 5th Ave, Ste. 2000
Seattle, WA 98104
(206) 464-7030
Jonathan.Mark@atg.wa.gov
Amy.Hanson@atg.wa.gov
Erica.Kosher@atg.wa.gov

*Attorneys for Plaintiff State of Washington*

CONSENT DECREE                    37

NO. 3:17-cv-05690-BHS

ATTORNEY GENERAL OF WASHINGTON
Antitrust Division
800 Fifth Avenue, Suite 2000
Seattle, WA 98104
(206) 464-7744

FOR DEFENDANTS

*/s/ Mitchell Raup*
Mitchell Raup
Herbert F. Allen
Polsinelli PC
1401 Eye Street NW, Suite 800
Washington, DC 20005
202.626.8352
202.626.8307
mraup@polsinelli.com
hallen@Polsinelli.com

Matthew Hans
Polsinelli PC
100 S. Fourth Street, Suite 1000
St. Louis, MO 63102
314.552.6820
mhans@polsinelli.com

Jessica M. Andrade
Polsinelli PC
1001 2nd Avenue, Suite 3500
Seattle, WA 98104
202.896.8769
jessica.andrade@polsinelli.com

G. Gabriel Zorogastua
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112
816.753.1000
gzorogastua@polsinelli.com

***Attorneys for Defendants Franciscan Health System, Franciscan Medical Group, and WestSound Orthopaedics, P.S.***

*/s/ Douglas Litvack*
Douglas Litvack
Davis Wright Tremaine LLP
1919 Pennsylvania Ave. NS, Ste. 800
Washington, DC 20006
202.973.4215
douglaslitvack@dwt.com

Douglas Ross
David Maas
MaryAnn Almeida
Miriam Swedlow
Davis Wright Tremaine LLP
920 Fifth Avenue, Suite 3300
Seattle, WA 98104-1610
206.757.8135
206-757-8184
douglasross@dwt.com
davidmaas@dwt.com
maryannalmeida@dwt.com
miriamswedlow@dwt.com

***Attorneys for Defendant The Doctors Clinic, a Professional Corporation***